The next case we'll call is Taylor versus Rosa et al. Number 20-2004. We welcome counsel in this case. Great to have you. We wish we could see you live, but this is the best we can do here, this Zoom. Although we're on Zoom, the usual rules apply. It's 15 minutes per side, and Pellon's counsel can ask for time for rebuttal. Will counsel be doing so? Yes, your honor. Three minutes, if I may. Okay, will do. That would be granted, and so you may proceed with your argument. Thank you, Judge Chigoris, and may it please the court, Brett J. Harrelson, Deputy Attorney General from the New Jersey Division of Law, and it is my privilege this morning to be appearing on behalf of the Attorney General of New Jersey for the defendant appellants. This court should reverse. The defendants are entitled to qualified immunity, and they are entitled to qualified immunity now on the pleadings. Four key facts in Taylor's complaint itself support this conclusion. Number one, the Craigslist ad for Taylor's website, which was called mysouthdakotaaddress.com, offered to assist specifically New York and New Jersey motorists in getting out-of-state auto registration. Number two... Can I stop you for a moment? What is the effect of the new law that Governor Christie signed? Your honor, I would concede that because the law was enacted after the arrest, we're not talking about that law. It doesn't really have any bearing here. We're specifically just talking about the insurance fraud statute, which is what he was alleging. The defendant, Carson, who was an investigator with the Office of the Insurance Fraud Prosecutor, responded to the advertisement, told Taylor that she wasn't able to get her car to pass inspection, and asked if he could help her to get auto registration and auto insurance. And in number three, in response, Taylor sends Carson forms to fill out and tells her it'll cost her $300. And number four, Taylor ends up meeting with Carson, starting an insurance application on her behalf from his computer using a South Dakota zip code. Well, speak if you would, Mr. Harrelson, to the argument made in your opponent's brief that the complaint alleges Taylor responded by emailing Carson forms to obtain auto registration, not auto insurance. That's like one of the main contentions they make in pushing back to you. The aim here was, you know, maybe it was not up and up on registration, but the insurance wasn't what the guy was advertising for, and wasn't what he intended to do, and that there was no probable cause that, you know, what's your answer to that? This was about registration. Insurance might have come along later, but that's what he was intending to get at. Well, Judge, I would say that he was arrested for insurance fraud, and he was arrested after using the South for insurance. So whether or not, and I'm looking at the complaint, I recognize that that was in the briefs, but I don't see in the complaint where it alleges that those forms weren't for auto insurance. But even, you know, assuming that they were only for vehicle registration, that doesn't change the fact that Taylor entered a South Dakota zip code in an insurance application for Carson from his computer. Okay, so take that as a given. I'm sorry. Go ahead, Judge Sherman. No, no, no, no. What is the, the information is the zip code, I take it. And the document, tell me exactly what constitutes the document so it conforms with the insurance fraud statute. The insurance fraud statute specifically contemplates electronic, a person is guilty of the crime of insurance fraud if that person knowingly causes to be made a false, fictitious, fraudulent, or misleading statement of material fact that a person attempts to submit, submits causes to be submitted, or attempts to cause to be submitted as part of, in support of, or in connection with an application to obtain or obtain. I would say that the application itself is contemplated by the legislature in that statute. So by, by submitting that zip code in connection with that electronic application for auto insurance, Taylor violated the statute. And even if he didn't, let's assume for the time being that, and I don't know if this is, this is enough for proof of guilty unreasonable doubt. I mean, maybe it is, maybe, maybe it isn't. But let's assume even, even it's not even enough for probable cause just for purposes of qualified immunity. It doesn't matter. The defendants are still entitled to qualified immunity as a matter of law because a reasonable investigator under those circumstances could have believed that by including that zip code in an insurance application, Taylor violated the law. And that's it. Can you go back to the, the, the change in law and tell us how that might influence here? Is it the case that before May of 2015, there had this kind of registering an out of state automobile or an automobile for out of state insurance had not been treated as a form of insurance fraud in New Jersey? It, and I don't mean to dodge your honor's question, but it, the fact remains he wasn't charged under the new statute. He was charged for the old statute for insurance fraud. So I don't know whether the office of the insurance fraud prosecutor was prosecuting this particular type of cases before the new law. I don't know if that new law was what motivated this investigation, but change the calculus. So you're saying whether it's irrelevant or should be irrelevant that this had never been prosecuted before. And this, these things happened, these events were in April, right? Of 2015. There's a change in the law and you're saying that even if it had never been prosecuted before, that doesn't matter. The new law and the new emphasis on this is irrelevant to the question of probable cause. I'm just trying to get your position, right? Yes, sir. That is the position. And moreover, I would add to that, that in order to defeat qualified immunity, they would have to be controlling authority saying that, you know, because no one had ever prosecuted a crime, not that it wasn't a crime, but just no one had enforced this statute until a new statute came along. And then suddenly they try. I mean, well, Taylor hasn't pointed to any such case. The district court didn't point to one. I'm not aware of any case, but in order to put the defendants on notice that arresting someone for violating a preexisting law merely because no one had done it before is constitutional. There would have to be some precedent for that. And to my knowledge, there isn't. So even if your honor's correct, and you know, that is unconstitutional, let's say it is. They weren't on notice, so they're entitled to qualified immunity under that theory of liability as well. And the fact remains that probable cause is a totality to circumstances analysis. It's a relatively easy bar to satisfy. And under the circumstances, a reasonable officer would have more than enough to believe that probable cause existed, even if this court disagrees. And the fact remains that again, Taylor hasn't cited to any case law. The district court didn't cite to any. In order to defeat qualified immunity, there would have to be factually analogous controlling authority or at least a robust consensus of cases of persuasive authority predating Taylor's arrest. Arresting someone for insurance fraud under those circumstances or factually similar circumstances violates the constitution. There isn't. Couldn't cite to one. District couldn't cite to one. Again, I couldn't find one. And without that, the defendants are entitled to qualified immunity on the pleadings as a matter of law. Is there is there anything in the record that would help us understand why the prosecutor dropped this case? No, Your Honor, not that I could see. I mean, unless, um, you know, the the the the complaint, the criminal complaint, which charged for for a higher degree of the crime, which requires, you know, five instances of insurance fraud. Um, maybe they realized that there was only one instance. But as this court held in Wright v. City Philadelphia, all it takes is is probable cause for one crime. And you have probable. You don't need probable cause for the exact crime that was committed. So that's of no import to the court's decision or the qualified immunity analysis. Um, but for all these reasons, this court should reverse that. No amount of discovery will alter this. This is a legal question. Was there case law that was remotely factually similar to the allegations predating Taylor's arrest? And the answer is no. And for those reasons, the defendants are entitled to qualified immunity. The court should reverse. And I'm more happy to answer any questions the panel might have. If not, I'm happy to yield the remainder of my time, except for the three minutes I reserved for rebuttal. Okay, Judge Jordan, you have anything more? No. And Judge Serica? No. Okay, thank you. We'll get you on on rebuttal. Thank you. Mr. Sarah, make you making you may proceed. Morning. Morning. My name is Mark Sarah. I represent the appellee, Shereen Taylor. In this case, I am waiving argument on the jurisdictional issue, which I mentioned in my brief. We are at the pleading stage of this case, and we're in a notice of pleading jurisdiction. There is no heightened pleading standard for civil rights complaints, at least since approximately 1993. I'm saying that this is just a purely legal matter. I'm sorry, Your Honor, I was saying that we understand that. But your adversary is saying this is just a purely legal matter, that this fails as a matter of law. Well, I disagree with him because it is a fact-specific analysis, and we need a factual record in order. There's enough facts here that are agreed upon that we can talk about whether a legal decision can be made. I mean, our case law is pretty clear that if a fact dispute has to be material to the question of immunity in order for us to say we don't have jurisdiction, and what we hear Mr. Harrelson saying here and in the briefing is there is no material dispute of fact. The facts are undisputed, and he's laid out the stuff that happened at the Starbucks and the advertising and things like that. So what's the fact dispute you're pointing to that's material to the issue of qualified immunity? Well, the most important element of this is that reverse rate evasion was not against the law on April 9th of 2015. And the warrant reads that on that date, Mr. Taylor committed five predicate acts for the crime of insurance fraud. Well, if it's true that that wasn't against the law, then that's a legal question, not a factual question, right? It either was against the law or it wasn't against the law. That's something we can look at the law and the state of the law at the time and know whether that was against the law or not, right? Precisely. So ultimately, that gets to the issue of probable cause. My argument is you cannot have probable cause for a law that does not exist. Probable cause does not exist in a vacuum. It is part of a continuum. In order to have probable cause, you must see the ultimate destination, if you will. It has to be linked to something. And on that day, at that time... Let's assume you're right, that it turned out not to be against the law. The argument coming from the other side is the officers didn't know that, and that the court here, the district court asked the question at much too high a level of abstraction, that the obligation of the district court is to ask a very specific question, and it asked a very abstract question. Here's what the court said in denying qualified immunity to Officer Carson. Here, a reasonable officer would understand that working with others to arrest an individual without probable cause violates the Fourth Amendment right against unreasonable seizures. That is a statement at the very highest level of abstraction, that you can't do things that are against the Fourth Amendment. How is that framing by the district court consistent with Supreme Court law and our own precedent that says you have to ask a question specific to the facts of the case before you? The issue, I believe, Your Honor, is objective reasonableness of the person swearing the warrant. And on this, in this fact pattern, what I think my adversary fails to understand, fails to realize, this was not a conventional arrest. I got to stop you, Mr. Sir, because you're going to have time to say your own thing, too. I would like you to answer the question I'm putting to you, though. And the question I'm putting to you is, how can you justify the framing of the question the way the district court put it? Is that a justifiable framing of the issue when the framing is you're not allowed to breach the Fourth Amendment? I mean, it's hard to imagine a more abstract statement than that. How can that be a correct approach to the qualified immunity question? I can't speak for the court below, but I know the case of Thomas versus Independence Township was cited, and I would direct the court to that case. And I believe, once again, I understand the point that the court is making. However, as I said earlier, we're at the pleading stage of this case. As I read it, as I stated in my brief, there isn't one case where a decision on the merits was made pursuant to a 12B6 motion on appeal. Well, this isn't a decision on the merits they're asking for. They're asking for a decision on qualified immunity, and they're asking for it saying the district court incorrectly framed the question. If you frame the question in a more fact-specific manner, you can find no case that is on par with this, and you can't find a robust set of decisions from other circuits or anything like that. I'm being inartful about how I'm doing it, but I'm trying to get you to speak to that point. Their assertion is the district court just shanked it, got it wrong, blew it when it framed the question the way it did. If it's framed correctly, there's no law to support the assertion that a reasonable officer should have known what happened here was incorrect. So even assuming there was no probable cause, because the law is as you're describing it, they wouldn't have understood that, and they're entitled to qualified immunity. That's what I hear them saying to us, and I'm trying to get you to respond to that piece of their argument. Again, Your Honor, my only response would be is that all of these cases are fact-specific, the court below discussed the facts, and I am bootstrapping my complaint at this point on the four corners of that document, and with respect to the two documents which are affixed to that complaint is Exhibit A and Exhibit B to be read as incorporated. Therein, there is the warrant with the charges dated May 12th of 2015, alleging that all this activity, the conspiracy, and the insurance fraud took place on April 9th, 2015, in the intervening period, and a legitimate question certainly is if Detective Rosa thought that he had enough evidence to support probable cause and to obtain a warrant, why did he wait from April 9th, 2015, until May 12th of 2015? What happened was during the intervening period on May 7th of 2015, Governor Christie signed the bill making reverse rate evasion a crime in New Under the newly changed law, but under the old law, a reasonable officer could have understood that representing yourself to be from out of state when you're not from out of state was something a reasonable officer could understand was wrong. Do you disagree with that? There can only be, the presumption has to be. But first stick with me. Are you disagreeing with the notion that lying in a form about where you live was not contrary to law prior to May of 2015? Well, I would say that first of all, we don't know if that's true. We don't know anything about the exchange between Detective Carson and Mr. Taylor. So I'm not willing to concede that. However, yes, I agree that there may have been wrongdoing here. And I think that Mr. Taylor may have been guilty of violating something in the motor vehicle code, the misregistration of an automobile. However, he was charged with a second degree offense. He was charged with what is known in places outside of New Jersey, as a felony. And if you do not have a law specifically prohibiting the activity that he was engaged in on the day that he was charged with behaving that way, then at the very least, the case should have been brought up from... Can I stop you for a second? I have a question. You had mentioned the warrant application. And I'm a little unclear on this, but what were the false statements or admissions that Rosa made in his warrant application? Detective Rosa must have stated to Judge Steele, and he procured the warrant by telephone, by the way, on May 12 of 2015. He must have said that he had committed insurance fraud. I'm asking, is there anything in the complaint that sets forth what the false statements or omissions were specifically? Well, I'd be more than happy to bolster that if I can get our case to the discovery stage. However, for today's purposes, I believe my complaint is well played. The point is that in its totality, this case was a non-starter because this was not illegal at the time that he did it. Ordinarily, an arrest or a police investigation proceeds through a series of premises towards a logical yet undetermined conclusion. That's not what happened in this case. And I think that's what the appellants failed to understand. In this case, they reached the conclusion first, and they used the conclusion to amplify and illuminate the premises that were Let me ask you a question. I'm looking at paragraph 27 of your complaint on Joint Appendix page 23. Two paragraphs earlier, paragraph 25 says, Defendant Carson completed the forms on or about April 1, 2015, listing her South Dakota address and a list of South Dakota address. Paragraph 27 says, after noting that in paragraph 26, that they met at the Starbucks. Quote, Plaintiff, using his own computer because Carson had none with her, went on to the E-Sher in South Dakota website and entered Carson's South Dakota zip code. At the end of the meeting, he advised Carson that she could complete an application by going to recall quote section of the same website. That's in your complaint. That's what Mr. Harrelson's referred to. That's an assertion and an admission that he entered a piece of false information in connection with the insurance. Why isn't that enough all by itself to provide probable cause for the assertion that this was a fraudulent statement made in connection with an application for insurance? The application was never submitted. There is no indication beyond that whether if in fact an attempt was being made to submit it, that it was being made to an insurance company with a license to conduct business and doing business within the borders of the state of New Jersey, because you do not have the reverse rate mechanism and language that is in the law that was signed into the bill that was signed into law on May 7th. If the activity was not insurance company for the purpose of obtaining a benefit or a windfall that one is not entitled to, my argument is that it wasn't against the law and it couldn't be charged on these facts. I don't think that the law that Mr. Taylor was charged with violating was designed to deter the type of activity that he was engaged in at the time. As I said, they had, in my opinion, if the case goes further, I will argue that they had no basis to charge him with a second degree offense. Obviously, something went awry because the case didn't proceed. They dismissed it in general. Absolutely nothing happened with this case from May 12th of 2015 until June 7th of 2017. Okay. Do you have anything else, counsel? I would just like to state that, again, to reiterate what I was going to mention initially, we are at the screening stage of this case. In the event that our complaint needs to be bolstered or replugged, I would ask that the court be mindful of the standard in the Third Circuit. We have not been asked to amend our complaint. I believe that at this stage of these proceedings, there's simply too much doubt to deprive Mr. Taylor of his day in court. He never did get his day in court in the underlying criminal case. I urge the court to affirm the decision of the court below and to remand the case for further proceedings. Thank you, counsel. Judge Jordan, do you have anything more? No. Judge Sirica? No. Okay, great. Well, thank you, counsel. Okay, we'll hear from your adversary. You have three minutes of rebuttal time. Thank you, Your Honor. I'm looking at the statute. I don't see anything in here that requires anyone charged under it to receive any sort of benefit. It just says that the person can't knowingly submit or cause to be submit, etc., statements of material fact in an insurance application. Does it have to be an application for insurance in New Jersey? A very good point. No. I'm looking at the statute. I don't see anything in here saying that the policy has to be a New Jersey insurance policy. So everything that Mr. Serra said respectfully, it's not supported by the statute itself. So it doesn't defeat the probable cause that existed or the defendant's entitlement to qualified immunity, even to the extent that probable cause didn't exist. And with respect to needing discovery and having to explore the facts, we have enough facts on this record to make a determination. We have an outline. We have a sketch that's sufficient to do a search, look for case law that's out there. Is this conduct something that is unconstitutional or was unconstitutional at the time of Taylor's arrest? No. If that weren't the case, we would be having a very different conversation. But I did not hear anything during Mr. Serra's remarks citing to any cases that held that this arresting someone for insurance fraud under these circumstances is unconstitutional. And with respect to the warrant, he clarified that he doesn't even have any reason to suspect that Rosa had made any purposefully false or misleading statements or omissions, which is exactly the type of conclusory allegations that are forbidden by Iqbal and progeny. So for those reasons, again, I would urge this court to reverse for these reasons and those questions. I thank the court for its time. Okay. Judge Jordan, do you have anything more? No. Judge Staricka? No. Okay. Thank you. Thank you, counsel. We'll take the case under advisement.